In Re: Condemnation by the Urban Redevelopment Authority of the City of Pittsburgh etc. Morris Benkovitz, Appellant.

In Re: Condemnation by the Urban Redevelopment Authority of the City of Pittsburgh etc. Urban Redevelopment Authority of Pittsburgh, Appellant *v.* Morris Benkovitz, Appellee.

Argued May 3, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Benjamin B. Wechsler, II,* with him *Elliott W. Finkel, Kaplan, Finkel, Lefkowitz and Ostrow,* for appellant, Morris Benkovitz.

*Marion E. Popiel,* for appellee, Urban Redevelopment Authority of Pittsburgh.

OPINION BY JUDGE WILLIAMS, JR., December 2, 1982:

In the instant matter, we have consolidated two separate appeals from an eminent domain order of the Court of Common Pleas of Allegheny County. The order here involved, dated March 6, 1981, decreed that the condemnee was entitled to delay compensation, or "detention damages," calculated from May 14, 1976. The same order also directed the condemnor to pay the condemnee, as a reasonable attorney fee, a sum equal to 40% of the total award for damages.

The first appeal, No. 863 C.D. 1981, is by the condemnee, Morris Benkovitz. In his appeal, Benkovitz asserts that the delay compensation should have been calculated from *May 1, 1972,* instead of from May 14, 1976. Benkovitz also argues that the lower court erred in not allowing him interest on part of the awarded attorney fee. The second appeal, No. 978 C.D. 1981, is by the condemnor, the Urban Redevelopment Authority of the City of Pittsburgh (Authority). The Authority's assertion of error is that the lower court, in setting the amount of the attorney fee, relied on the contingent fee agreement between the condemnee and his attorney. Benkovitz, the condemnee, has characterized the Authority's appeal as being frivolous, and would have us impose sanctions under Pa. R.A.P. 2744.

## BACKGROUND

Morris Benkovitz owned three contiguous buildings located at 1808, 1810 and 1812 Centre Avenue in the City of Pittsburgh. The three buildings were used as a single economic entity, a wholesale and retail seafood business. In 1969, the City of Pittsburgh approved a neighborhood renewal plan for the area in which the Benkovitz property was located. In the few

years that followed the approval of the renewal plan, the Authority acquired and domolished buildings near Benkovitz's property, but did not acquire his. However, because of the impact of the renewal project, the seafood business conducted on Benkovitz's property ceased to be profitable by the spring of 1972.

For more than two years following the spring of 1972, the seafood business was operated at a loss, and was unable to generate enough income to meet the taxes, insurance and maintenance expenses on the property. During that period, Benkovitz sought to sell or lease the property, but without success. In September 1974, he closed the premises to avoid further losses. On October 31, 1974, Benkovitz filed a petition for the appointment of viewers, under Section 502(e) of the Eminent Domain Code (Code),[1] alleging that a de facto taking of his property had occurred as of May 1, 1972.

On February 11, 1976, the Court of Common Pleas of Allegheny County dismissed the Authority's preliminary objections to the appointment of viewers. The court adjudged that Benkovitz had suffered a de facto taking on May 1, 1972, as he had alleged. Accordingly, the court's order directed the viewers to proceed with the determination of damages.[2] On May 14, 1976, the Authority paid Benkovitz the sum of $68,443 as estimated just compensation.

After conducting a view of the property, the viewers heard the case in July of 1976. On August 11, 1976, they awarded Benkovitz the sum of $125,000 as damages. The viewers also found that Benkovitz had continued to occupy the property and operate the business there until September 1, 1974, when he "vacated"

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, as amended, 26 P.S. §1-502(e).

[2] The Authority took no appeal from the dismissal of its preliminary objections to the appointment of viewers.

the premises.[3] The viewers further found that at no time, even as of the date the Authority paid the estimated just compensation, had the condemnee tried to tender possession of the property to the Authority.

From the viewers' award, both Benkovitz and the Authority appealed to the Court of Common Pleas of Allegheny County. While those appeals were pending, the Authority paid the condemnee, in February 1977, an additional $33,000 on account of damages. The appeals were tried by a jury in May 1978; and, on May 9, 1978, the jury returned a verdict of $105,000. Complaining that the verdict was inadequate and otherwise erroneous, Benkovitz filed a motion for a new trial. The trial court denied that motion, and we affirmed. *Benkovitz Appeal*, 56 Pa. Commonwealth Ct. 523, 425 A.2d 1178 (1981).

Prior to the commencement of litigation, Benkovitz had entered into a contingent fee agreement with his attorney. Pursuant to that agreement, the condemnee was obligated to pay his attorney 33⅓% of all sums recovered if the case did not go beyond the board of viewers; and 40% of all sums recovered if the case went through a jury trial. Before the case was heard by the viewers, and again before it went to trial, Benkovitz had sought to recover an attorney fee under Section 609 of the Code.[4] When the estimated just compensation was paid to him in May 1976, he requested the Authority to make a *pro tanto* attorney-fee payment. When the Authority refused, Benkovitz sought judicial enforcement of his request: In Novem-

---

[3] There is some confusion in the documents of this case as to who was actually operating the business on the Benkovitz property. The judge who granted the petition for viewers indicated that the business was operated by a tenant of Benkovitz. However, in Benkovitz's brief to our Court, the condemnee indicates that he was the operator of the business and the owner of the realty.

[4] 26 P.S. §1-609. Section 609 of the Code was added by Section 7 of the Act of December 29, 1971, P.L. 639.

ber 1976, more than a year and a half before the trial, he petitioned the court for a rule to show cause, demanding that the Authority pay him a *pro tanto* attorney fee equaling 33⅓% of all damages paid as of that time. On March 9, 1977, the court dismissed the petition. Later, when the condemnee appealed to us from the denial of his motion for a new trial, his appeal included a challenge to the order that had denied him the *pro tanto* attorney fee. Regarding that issue, we held that the order was interlocutory and not reviewable. *Id.* at 529, 425 A.2d at 1182.

Following our decision upholding the jury verdict on damages, the trial court addressed the issue of delay compensation under Section 611 of the Code,[5] and the matter of a reasonable attorney fee under Section 609. As we stated at the outset, the trial court concluded that the condemnee's right to delay compensation began to run as of May 14, 1976; and that the condemnee was entitled to an attorney fee equaling 40% of all sums recovered. Regarding its first conclusion, the trial court reasoned that when the Authority *paid the estimated just compensation* on May 14, 1976, that payment gave the Authority the right to possess the Benkovitz property and thus triggered the condemnor's liability for delay compensation. As for the attorney fee, the court determined that the 40% contingent fee was reasonable under all the circumstances of the case. When those conclusions were embodied in the court's order of March 6, 1981, there followed the two appeals now before us.

## No. 863 C.D. 1981

The threshold argument in Benkovitz's appeal is that his right to delay compensation accrued on the date which the lower court fixed as the time of the de facto taking: May 1, 1972. To amplify his argument,

---

[5] 26 P.S. §1-611.

236

Benkovitz posits that May 1, 1972 was the date his property lost its economic viability because of the renewal project. That entire argument must fail.

It is well settled that, under Section 611 of the Code, a condemnee has no right to delay compensation so long as he retains *possession* of the property in question. *E.g., Govatos v. Redevelopment Authority of the County of Montgomery*, 11 Pa. Commonwealth Ct. 529, 314 A.2d 536 (1974). Such a rule is clearly mandated by the terms of Section 611, which, in part, states that:

> *The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation,* nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. (Emphasis added.) [6]

The condemnee in the instant case admits that, between May 1, 1972 and September of 1974, he contin-

[6] Section 611 also contains the following exception to the above provision:

> [I]f the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: (Emphasis added.)

The above exception cannot be construed as being applicable to the instant case. The very essence of Benkovitz's condemnation claim was that a constructive *total* taking of his property occurred on May 1, 1972. Once that claim was judicially upheld, the condemnee's position should have been no different than if the Authority had formally effected a *total* taking on May 1, 1972. Under prior law, so long as the condemnee continued to occupy the property after its total condemnation, or had not relinquished the right to do so, he had a liability for rent that offset any right to delay compensation. The first sentence of Section 611 was intended to obviate the need for such an exercise in accounting. Therefore, to hold that the instant de facto condemnee was entitled to delay compensation from the date of the de facto taking, notwithstanding his continuing occupancy, would be contrary to the purpose of the first sentence in Section 611.

ued to operate a business on his property. Even if the business was operated at a loss during that period, such activity clearly amounted to possession. And, although he ceased his *occupancy* of the premises in September of 1974, that fact did not negate the possession that he retained by virtue of being the owner. In short, the condemnee had possession even after September 1974.

With respect to the issue of delay compensation, a more significant date was May 14, 1976, when the Authority paid Benkovitz the estimated just compensation. Under Section 407(a) of the Code,[7] such payment gave the *condemnor* the right to possession. *Nanticoke Public Service Co., Inc. v. Redevelopment Authority of Luzerne County*, 41 Pa. Commonwealth Ct. 74, 399 A.2d 429 (1979).[8] Because the Authority gained the right of possession on May 14, 1976, the lower court was correct in fixing that date for the accrual of the right to delay compensation.[9] It should be noted, however, that after the date estimated just compensation is paid, there is no delay compensation due with respect to that amount. Section 611 of the Code so mandates.

---

The purpose of the exception is to address those unusual circumstances wherein a condemnation appropriates or intends to appropriate something other than the *actual possession* of the subject property. *See County of Bucks v. .800 Acres of Land*, 32 Pa. Commonwealth Ct. 448, 379 A.2d 903 (1977). Since the Authority was charged with what was, in effect, a *total taking* of the condemnee's property, that total taking included the right to obtain possession.

[7] 26 P.S. §1-407(a).

[8] Although Section 407 is, on its face, directed to cases wherein a Declaration of Taking has been filed, we have approved the application of that Section to a de facto taking case. *City of Philadelphia Appeal*, 40 Pa. Commonwealth Ct. 409, 398 A.2d 224 (1979).

[9] Of course, such would not be the case for a condemnee who retained occupancy even after the payment of estimated just compensation.

The other point in Benkovitz's appeal is his challenge to the legal sufficiency of the attorney fee awarded by the trial court. He argues that the court erred in not including an amount that represented interest on the *pro tanto* fee the Authority had refused to pay him in 1976. We see no merit in that argument. It is our conclusion that, in the absence of a stipulation to the contrary, the condemnee has no right to *receive* an attorney fee until the appropriate hearing tribunal determines what is a reasonable fee under Section 609 of the Code. *See Airportels, Inc. Appeal,* 59 Pa. Commonwealth Ct. 86, 428 A.2d 1026 (1981). In the instant case, that determination was one for the trial court to make, following the jury's verdict.

## No. 978 C.D. 1981

The Authority's appeal is, by obvious implication, an effort to bring about a reduction in the attorney fee awarded by the trial court. To that end, the Authority argues that the trial judge simply looked to the contingent fee agreement, and that such a method was not the proper means of determining a reasonable attorney fee under Section 609 of the Code. According to the Authority, the court should have based its fee award on an hourly rate of compensation for services rendered.

The important consideration in this appeal is the trial judge's statement that the fee award was based on "all the circumstances" of the case. It should be noted that, prior to the lower court's order fixing the attorney fee, almost seven years of litigation had transpired.

The reasonableness of an attorney fee is a matter for the sound discretion of the trial court and can be disturbed by an appellate court only when there is a clear abuse of discretion. *LaRocca Estate,* 431 Pa. 542, 246 A.2d 337 (1968); *Thompson Estate,* 426 Pa.

270, 232 A.2d 625 (1967). The trial court's judgment brings with it a presumption of correctness. *Baughman's Estate*, 281 Pa. 23, 126 A. 58 (1924). The Authority has not demonstrated that the trial court abused its discretion relative to the attorney fee awarded. Absent such a showing, it would not be appropriate for us to interfere with the award. *Thompson Estate.*

As for the condemnee's motion for sanctions under Pa. R.A.P. 2744, it is our conclusion that such relief is not warranted in this case; and, hence, we deny the motion.

## CONCLUSION

For the reasons set forth in this opinion, we affirm the order of the lower court. We must note, however, that the order here in issue was not stated in terms of being a judgment for specific sums of money. The order must be modified accordingly upon the return of the record to the court below.

## ORDER

AND Now, the 2nd day of December, 1982, the order of the Court of Common Pleas of Allegheny County, dated March 6, 1981, at 1162 of January Term 1975, is affirmed. The motion in No. 978 C.D. 1981 for sanctions under Pa. R.A.P. 2744 is denied. The lower court shall change its order to the form of a judgment for specific sums of money.