# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Millcreek, :
:
v. : No. 1725 C.D. 2015
:
Angela Cres Trust of June 25, 1998 :
:
Appeal of: Angela Cres Trust of :
June 25, 1998 and Laurel A. Hirt :
as Trustee of the Angela Cres :
Trust of June 25, 1998 :

Township of Millcreek, :
Appellant :
:
v. :
: No. 1847 C.D. 2015
: Argued: April 12, 2016
Angela Cres Trust of June 25, 1998 :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED:  June 22, 2016

Millcreek Township (Township) and the Angela Cres Trust of June 25, 1998 (Trust) have challenged three orders of the Court of Common Pleas of Erie County (trial court) awarding the Trust $517,868 in attorney fees and expenses and $164,000 in expert fees and expenses that were incurred by the Trust in a condemnation proceeding.  The Township asserts that the Trust's request for reimbursement of its costs in successfully defending the condemnation was filed untimely, depriving the trial court of jurisdiction.  The Trust asserts that the trial

court's award, which was far below what it requested, is unreasonable. We affirm the trial court.

## Background

In June 2005, the Township filed a declaration of taking of Trust property pursuant to the Pennsylvania Eminent Domain Code,[1] and this was followed in January 2006 with an amended declaration of taking. The Township initiated its condemnation of Trust land as part of its "Heidler Road Channel Improvement Project," which was undertaken to improve storm water management. The Trust filed preliminary objections[2] to the Township's amended declaration of taking. On December 16, 2009, after a hearing, the trial court sustained the Trust's preliminary objections, concluding that the Township lacked authority under The Second Class Township Code[3] to condemn property for the purpose of creating a new water channel. This Court affirmed the decision of the trial court. *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. §§1–101 – 1–903, repealed by Section 5 of the Act of May 4, 2006, P.L. 112. In 2006, the Eminent Domain Code was consolidated at 26 Pa. C.S. §§101-1106. The trial court and the parties refer to the pre-consolidated version of the Eminent Domain Code, which was in effect when the declaration of taking of Trust property was filed. For consistency, this opinion also cites to the pre-consolidated version of the Eminent Domain Code. Notably, the substantive provisions relevant here have not changed; they have simply been reordered and renumbered in the current, consolidated version of the Eminent Domain Code.

[2] "Preliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions." *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates,* 674 A.2d 1204, 1207 (Pa. Cmwlth. 1996) (citing *North Penn Water Authority v. A Certain Parcel of Land*, 650 A.2d 1197 (Pa. Cmwlth. 1994)). In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages. *North Penn Water Authority,* 650 A.2d at 1201.

[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-68701.

1288 (Pa. Cmwlth. 2011), *appeal denied*, 49 A.3d 444 (Pa. 2012). On August 3, 2012, four days after the Township's appeal to the Pennsylvania Supreme Court was denied, the Township filed a Motion for Leave to File a Second Amended Declaration of Taking. It was denied on October 12, 2012.

One year later, on October 23, 2013, the Trust filed a Petition for Fees, Costs and Expenses ("Fee Petition") seeking reimbursement of the $3,359,900.33 it had spent to challenge the Township's condemnation. Specifically, the Fee Petition sought $2,278,431.75 for costs incurred in the eminent domain proceeding; $822,471.00 for costs incurred in a related Environmental Hearing Board proceeding; and $258,997.58 for costs incurred in both the eminent domain and Environmental Hearing Board proceedings. Reproduced Record at 960a (R.R. ___). On December 3, 2013, the Township filed a response that, *inter alia*, asserted that the trial court lacked jurisdiction because the Fee Petition was not timely filed.

While the Fee Petition was pending, on July 7, 2014, the Trust filed a Petition for Decree Revesting Title of the Trust land in the Trust. The Township did not oppose this petition.[4] On July 16, 2014, the trial court granted the petition and entered a decree revesting title in the Trust.

Thereafter, on July 30, 2014, the trial court rejected the Township's argument that the Trust's Fee Petition was untimely filed and scheduled an evidentiary hearing to determine the reasonableness of the Trust's request.[5] In

_____

[4] In its response, the Township noted that its action did not "constitute a waiver of [its] claim that the [Fee Petition] is untimely." R.R. 1598a.

[5] The parties engaged in mediation to try to resolve the Fee Petition and several other matters. After concluding that mediation had been unsuccessful, the trial court conducted hearings in

**(Footnote continued on the next page . . .)**

doing so, however, the trial court denied the Trust's request for recovery of fees and costs incurred in the Environmental Hearing Board proceeding.

On September 4, 2014, the Trust filed a Supplemental Petition specifying that it sought $649,682.63 for its expert fees. When the Trust filed its Fee Petition, it requested recovery of those expert fees, but the total was unknown.

Following hearings, on December 16, 2014, the trial court awarded the Trust $517,868 in attorney fees, costs and expenses. On August 19, 2015, following additional hearings, the trial court awarded the Trust $164,000 in expert witness fees, costs and expenses.

On September 11, 2015, the Trust appealed the trial court's orders of July 30, 2014, December 16, 2014, and August 19, 2015. On September 23, 2015, the Township cross-appealed.

**Township Appeal**

The Township argues on appeal[6] that the trial court lacked jurisdiction over the Trust's Fee Petition. Relying on Section 5505 of the Judicial Code, 42 Pa. C.S. §5505,[7] the Township contends that the trial court's jurisdiction to award fees and costs did not extend beyond 30 days after the final order, which it argued was

---

**(continued . . .)**

2014 and 2015 on the Trust's request for reimbursement of its costs to engage legal, appraisal and engineering services.

[6] On November 23, 2015, this Court consolidated the cross-appeals and designated the Township as appellant.

[7] Section 5505 states:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa. C.S. §5505.

4

the December 16, 2009, order sustaining the Trust's preliminary objections.[8] Because the Fee Petition was filed on October 23, 2013, the trial court lacked jurisdiction to act upon the Trust's Fee Petition.

In response, the Trust argues that the Eminent Domain Code provides the complete and exclusive procedure on its Fee Petition, and it places no time limit upon a condemnee's request for recovery of its reasonable fees and expenses

---

[8] In support of its jurisdictional argument, the Township points to this Court's recent decision in *Ness v. York Township Board of Commissioners*, 123 A.3d 1166 (Pa. Cmwlth. 2015). In that case, Ness challenged the validity of an ordinance, which challenge was dismissed on December 17, 2013. Five months later, the township requested attorney fees, asserting that Ness' conduct had been arbitrary, vexatious and in bad faith. The trial court agreed and ordered Ness to pay the township $3,892.70 pursuant to Section 2503(a) of the Judicial Code, 42 Pa. C.S. §2503(a). Ness appealed.

Section 2503(a) authorizes the recovery of attorney fees in certain circumstances, such as a litigant's vexatious conduct. Section 2503(a) states:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> * * *
>
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.
>
> (10) Any other participant in such circumstances as may be specified by statute heretofore or hereafter enacted.

42 Pa. C.S. §2503(a)(9), (10). In *Ness*, this Court did not reach the question of whether the township had been the victim of vexatious conduct because we concluded that the township's fee petition had been untimely filed. In so holding, we relied upon Section 5505 of the Judicial Code, which states:

> Except as otherwise provided or prescribed by law, *a court upon notice to the parties may modify or rescind any order within 30 days after its entry*, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa. C.S. §5505 (emphasis added). Because the township requested counsel fees on May 22, 2014, five months after the trial court's December 17, 2013, order dismissing Ness' petition, we held that the trial court lacked jurisdiction to modify that order.

incurred in a condemnation proceeding. In support, it directs our attention to *McGaffic v. City of New Castle*, 973 A.2d 1047 (Pa. Cmwlth. 2009).[9]

In reaching its decision, the trial court first examined the two relevant provisions of the Eminent Domain Code. Former Section 406 states, in relevant part, that where

> preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under section 408, to be assessed as therein provided.

26 P.S. §1-406(e) (repealed).[10] In turn, former Section 408 provides that

---

[9] In *McGaffic*, this Court considered when the statute of limitations for breach of contract accrued against the city, which had assumed, by contract, the liabilities of a condemnor, the redevelopment authority. This Court explained that in a *de facto* taking, damages included attorney fees and reimbursement for costs and expenses of litigation through trial. Further, delay damages up to the date of payment of the award were recoverable, and those damages could only be ascertained at the end of the eminent domain proceedings. Thus, the plaintiffs' breach of contract suit against the city accrued, and the four-year statute of limitations began to run, when they had notice of the specific damages amount at the end of their *de facto* taking litigation. *McGaffic* is inapplicable because it did not address the time limit, if any, for seeking reimbursement of costs under the Eminent Domain Code.

[10] Former Section 406 of the Eminent Domain Code states, in full, as follows:

> (a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.
> (b) Preliminary objections shall state specifically the grounds relied upon.
> (c) All preliminary objections shall be raised at one time and in one pleading. They may be inconsistent.

**(Footnote continued on the next page . . .)**

*the condemnee shall be reimbursed by the condemnor for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings.* Such damages shall be assessed by the court, or the court may refer the matter to viewers to ascertain and assess the damages sustained by the condemnee, which award shall be subject to appeal as provided in this act....

26 P.S. §1-408 (repealed) (emphasis added in part and omitted in part).[11] Neither former Section 406 nor former Section 408 of the Eminent Domain Code establishes a deadline for the condemnee's request for reimbursement of attorney and expert fees and costs.

The trial court also reasoned that the condemnation proceeding had not yet concluded when the Trust filed its Fee Petition because the Township still held title to the Trust property.[12] When the trial court ordered title revested in the

**(continued . . .)**

(d) The condemnee shall serve a copy of the preliminary objections on the condemnor within seventy-two hours after filing the same.

(e) *The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title.* If preliminary objections are finally sustained, which have the effect of finally terminating the condemnation, the condemnee shall be entitled to damages as if the condemnation had been revoked under section 408, to be assessed as therein provided. If an issue of fact is raised, the court shall take evidence by depositions or otherwise. The court may allow amendment or direct the filing of a more specific declaration of taking.

26 P.S. §1-406 (repealed) (emphasis added). The above provision is now at 26 Pa. C.S. §306.

[11] This language is now codified at 26 Pa. C.S. §306.

[12] When a declaration of taking is filed in court, title passes to the condemnor on the date of such filing. Former Section 402 of the Eminent Domain Code, 26 P.S. §1-402 (repealed; now codified at 26 Pa. C.S. §302). The condemnor, upon filing its declaration of taking, shall record notice thereof in the office of the recorder of deeds of the county in which the property is located. Former Section 404 of the Eminent Domain Code, 26 P.S. §1-404 (repealed; now codified at 26 Pa. C.S. §304). The notice shall be indexed in the deed indices showing the

**(Footnote continued on the next page . . .)**

Trust on July 16, 2014, the Township did not challenge the court's jurisdiction to enter that order. Accordingly, assuming that Section 5505 of the Judicial Code applied to an eminent domain proceeding, the Trust's Fee Petition was filed before the trial court's final order of July 16, 2014. Thus, the trial court concluded that the Trust satisfied the 30-day deadline in Section 5505.

The Township contends that the trial court erred in two ways. First, the trial court misread the Judicial Code. Section 2503(10) expressly applies to a "reasonable counsel fee as part of the taxable cost ... as may be specified by statute heretofore or hereafter enacted." 42 Pa. C.S. §2503(10). It argues that the Eminent Domain Code is such a statute. Second, the trial court's order of July 16, 2014, simply corrected an error. As such, it cannot be treated as the final order in the eminent domain proceeding. We reject the Township's argument.

First, Section 102(a) of the Eminent Domain Code states that it is the "complete and exclusive procedure and law" to be followed in condemnation proceedings. 26 Pa. C.S. §102(a).[13] This leaves no room for the other "procedure

---

**(continued . . .)**

condemnee as the grantor and the condemnor as the grantee. *Id.* After the preliminary objections were granted, title did not automatically revest in the Trust. On July 16, 2014, the trial court entered an order revesting title in the Trust.

[13] Former Section 303 of the Code similarly provided:

> *It is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property* for public purposes and the assessment of damages therefor, except as provided in section 901: Provided, however, That nothing in this act shall be deemed to affect, vary, alter or modify the jurisdiction or power of the Public Utility Commission of the Commonwealth of Pennsylvania, the State Mining Commission created under the act of June 1, 1933 (P.L. 1409), as reenacted and amended, or any act providing for the assessment of benefits for public improvements on the properties benefited. This act is not intended to enlarge or diminish the power of condemnation given by law to any condemnor.

26 P.S. §1-303 (repealed) (emphasis added).

and law" set forth in Section 2503(10) of the Judicial Code. *See In re Right of Way for Legislative Route 1040 v. Pikur Enterprises, Inc.,* 596 A.2d 1253, 1260 (Pa. Cmwlth. 1991) (stating that this Court "has continually determined that causes of action, rules of procedure and pleadings which try to circumvent the [Eminent Domain] Code are improper."). Recovery of condemnation costs is not done by modification of the order granting just compensation or sustaining preliminary objections. It is a separate order. Section 5505 of the Judicial Code governs fee awards that are entered by modification of the final order in the case.

Second, Section 5505 of the Judicial Code states that its 30-day time limit applies "except as otherwise provided or prescribed by law." 42 Pa. C.S. §5505. It is "otherwise provided" in the Eminent Domain Code, which makes its procedures "exclusive" and places no specific time limit upon a condemnee's request for fees incurred in defeating the condemnation. 26 Pa. C.S. §102.

Third, the type of costs that can be recovered under Section 2503(10) of the Judicial Code does not match those that can be recovered under former Section 408 of the Eminent Domain Code. Section 2503(10) of the Judicial Code speaks only to "counsel" fees. By contrast, former Section 408 of the Eminent Domain Code authorizes reimbursement "for *reasonable appraisal, attorney and engineering fees and expenses* actually incurred because of the condemnation proceedings." 26 P.S. §1-408 (repealed; now codified at 26 Pa. C.S. §306) (emphasis added). This lack of symmetry between the Judicial Code and the Eminent Domain Code makes Section 5505 of the Judicial Code irrelevant to fee petitions filed under the Eminent Domain Code.

In any case, we discern no error in the trial court's holding that the final order in the eminent domain proceeding was its July 16, 2014, order that the

9

deed, held by the Township, revest in the Trust.[14]  Further, the Township's own actions are inconsistent with its argument that the eminent domain proceeding ended on December 16, 2009, because in August 2012, the Township sought leave to file a Second Amended Declaration of Taking.  This filing cannot be reconciled with the Township's position here that the trial court lacked jurisdiction as of January 15, 2010.

We affirm the trial court's order of July 30, 2014, holding that it had jurisdiction over the Trust's Fee Petition.

### Trust Cross-Appeal

We turn to the Trust's cross-appeal, which asserts that the trial court erred by not awarding it the full amount of fees, costs and expenses that it incurred in defeating the Township's condemnation.[15]  The trial court held that the Trust did not prove that its request for $3,359,900.33 in attorney fees, costs, and expenses was reasonable.  Instead, the trial court awarded the Trust $517,868 as reasonable reimbursement for its attorney fees and $164,000 for the Trust's engineering-related fees and costs.

---

[14]   The Township argues that the trial court wrongly relied upon former Section 408 to find jurisdiction and missed the distinction between "relinquishment" and "revesting" under the Eminent Domain Code.  According to the Township, there was no relinquishment in this case; rather, there was vesting of title under former Section 406(e).  Accordingly, the trial court erred in characterizing the issue before it as a "relinquishment."  The Trust sought reimbursement of costs under former Sections 406 and 408 of the Eminent Domain Code.  The trial court examined these provisions for a deadline and found none.   The trial court's use of the word "relinquishment," as opposed to "revested," is simply irrelevant.

[15] This Court's review in eminent domain cases is limited to determining whether the trial court abused its discretion or committed an error of law.  *Harborcreek Township v. Ring,* 570 A.2d 1367, 1370 (Pa. Cmwlth. 1990).

10

We begin with a review of the legal principles applicable to a request for fees filed under the Eminent Domain Code. Former Section 408 of the Eminent Domain Code authorizes the recovery of costs incurred "because of the condemnation proceedings." 26 P.S. §1-408 (repealed; now codified at 26 Pa. C.S. §306). This Court has explained that this statutory recovery is "not included or embraced within just compensation for land taken for eminent domain purposes" but is a separate recovery. *In re: Condemnation by the Commonwealth, Department of Transportation, of Right of Way for Legislative Route 1021, Section 1B, a Limited Access Highway, in the City of Pittsburgh,* 709 A.2d 939, 943 (Pa. Cmwlth. 1998). Further, the statute does *not* require that a condemnee be made whole; rather, recovery is limited to *reasonable* attorney and expert fees and costs. *Id.* at 944. The reasonableness of an award is a matter committed to the sound discretion of the trial court and can be disturbed by an appellate court only upon a clear abuse of discretion. *Matter of Condemnation by Urban Redevelopment Authority of Pittsburgh of Certain Lands in the Twenty-First Ward of the City of Pittsburgh v. Kristoff,* 451 A.2d 1071, 1072-73 (Pa. Cmwlth. 1982). The trial court's judgment comes to us with a presumption of correctness. *Id.* at 1073 (citing *In re Baughman's Estate,* 126 A. 58 (Pa. 1924)).

With respect to the grant of attorney fees, our Supreme Court has identified the specific factors to be considered by the trial court:

> [T]he amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very

11

importantly, the amount of money or the value of property in question.

*In re LaRocca's Trust Estate*, 246 A.2d 337, 339 (Pa. 1968). Deference must be afforded to the trial court's decision when it applies the *LaRocca* factors:

> *[The trial court's] opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error....* [T]he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error.

*Id.* at 340 (internal quotation marks and citations omitted) (emphasis added).

In support of its request for legal fees, the Trust offered the testimony of William P. Bresnahan[16] and James T. Marnen.[17] Bresnahan explained that he did not review each individual time entry. Rather, he looked at a category of legal activity; if the amount charged and time involved seemed reasonable, he accepted it. Marnen likewise testified that he did not look at each invoice or assess the time or activity recorded by each of the persons on the invoices. Instead, he based his conclusions on a broad review.

In opposition, the Township offered the testimony of Arthur H. Stroyd, Jr., who has extensive experience in reviewing legal billing practices. He has trained young lawyers in proper billing practices; reviewed outside counsel bills; and served as Special Master for the U.S. District Court for the Western District of Pennsylvania in Erie, where he was responsible for assisting the court in

---

[16] Bresnahan is an attorney at the law firm Hollinshead, Mendelson, Bresnahan & Nixon, P.C., whose practice focuses on Eminent Domain cases. R.R. 2513a.

[17] Marnen is a retired attorney who specialized in complex, commercial litigation. Notes of Testimony (N.T.), 10/28/2014, 79-81; R.R. 2058a-60a.

resolving a significant fee dispute. Stroyd reviewed each time entry made by the Trust's attorneys. He observed that more than $280,000 of the Trust's attorney fees was expended on other cases and that almost all of the Trust's entries were block billed. Accordingly, he could not assess the reasonableness of each particular entry. He did opine there were more lawyers and hours spent on this case than was reasonable.

The trial court found the testimony of Stroyd, the Township's expert, to be "considerably more compelling than that of either [of the experts] who testified on behalf of the Trust." Trial Court op., 12/16/2014, at 32.[18] The trial court found that "Mr. Stroyd meticulously reviewed the time and billing records involved in the case, scrutinized each entry and methodically evaluated the appropriateness of the fees being charged." *Id.* at 34. Stroyd identified those attorney fees that were not related to the condemnation or were excessive. Stroyd also identified excessive charges for travel, photocopying and over-staffing. For example, six lawyers and a paralegal charged $33,000 to attend a meeting that may, or may not, have been about the condemnation, as opposed to one of the other litigation matters. Accordingly, the trial court credited Stroyd's testimony.

The trial court rejected the opinions of the Trust's experts that all attorney fees charged were reasonable. It found these opinions conclusory, at best, because they were not based upon a line-by-line analysis of time entries, as was Stroyd's analysis.

---

[18] On December 16, 2014, after three days of testimony and the receipt of numerous exhibits totaling several thousand pages, the trial court issued a 46-page opinion and order. The trial court made 47 findings of fact.

13

Given the deficiencies in the Trust's case on legal fees, the trial court "settle[d] on an outcome that reflect[ed] a reasonable degree of proportionality" after it weighed "all the relevant factors" and considered "the limitations in the evidentiary record." *Id*. at 44. The trial court acknowledged that the Trust's legal team had done outstanding work and that the Trust was entitled to reasonable reimbursement. To develop a reasonable fee award, the trial court began with the Township expenditure of $258,934 on attorney fees, which the trial court found reasonable. The court then doubled that amount to account for the vigorous and successful efforts of the Trust's attorneys. *Id.* at 44-45. This methodology produced $517,868, which the trial court awarded the Trust as fair and reasonable.

Thereafter, on August 19, 2015, after several days of hearings, the trial court issued a 34-page opinion and order that awarded the Trust $164,000 for its expert fees, costs, and expenses incurred in defeating the condemnation. The trial court reduced the Trust's request for $649,682.63 by two-thirds.[19] In its opinion, the trial court explained that the reduction was done to account for

> the duplication and redundancy of effort, the applicability of the work to other lawsuits, and the limited role played in the outcome by most of the work, as well as the character of the work performed and the responsibility shouldered.

Trial Court op., 8/19/2015, at 32-33. Concluding that the Trust was "entitled to an amount that reflects both the practical and equitable considerations that underlie the *LaRocca* rationale," the trial court awarded $164,000. *Id.*

---

[19] One of the Trust's experts, Christopher M. Hager, estimated the expert fees and costs spent by the Township from 1998 through 2012 to be $310,462.27. N.T., 5/27/2015, at 148; R.R. 7020a.

On appeal, the Trust challenges the amounts of the trial court's award. Specifically, it raises the following issues:

(1)  The trial court erred in excluding Environmental Hearing Board Fees, Costs and Expenses from the Trust's award;

(2)  The trial court erred in reducing fees, costs and expenses for legal and expert services in the condemnation case because they were of potential use in other litigation;

(3)  The trial court erred in its consideration and application of the *LaRocca* factors;

(4)  The trial court erred in applying a "proportionality" standard to reduce the Trust's award;

(5)  The trial court erred by failing to identify specific findings as a basis for calculating its award;

(6)  The trial court erred by failing to consider the diminution in the value of the Trust's property resulting from the condemnation;

(7)  The trial court erred in finding that the amount of time billed by the Trust's attorneys and experts was unreasonable;

(8)  The trial court erred in finding that the Trust's retention of Philadelphia counsel was unnecessary and that Philadelphia counsel's bill rates were not "normative";

(9)  The trial court erred by reducing the Trust's fees based on paralegal rates; and

(10) The trial court erred by reducing the Trust's award due to the use of block billing.

Trust's Brief at pp. ii-iii.  We address these issues *seriatim*.

In its first issue, the Trust argues that the trial court erred in excluding the costs incurred by the Trust in the proceedings before the Environmental Hearing Board that challenged the project permit sought by the Township.  The

15

Trust argues that former Section 408 of the Eminent Domain Code allows condemnees to recover costs and expenses incurred "because of the condemnation proceedings." 26 P.S. §1-408 (repealed; now codified at 26 Pa. C.S. §306). It contends that its participation in the environmental proceeding was directly caused by the Township's declaration of taking. The Township rejects this reading of former Section 408 as overbroad.

The trial court held that the condemnation of the Trust property bore no relationship to the grant of a permit by the Department of Environmental Protection (DEP). Trial Court op., 7/30/2014, at 6. As the trial court explained, "if a township were to fail to obtain a permit pursuant to 53 [P.S.] §66513,[20] it does not necessarily follow that condemned property would be relinquished under the Eminent Domain [C]ode." *Id.* The Township would simply seek an alternate permit and address the relevant concerns, as it did when DEP denied its first permit in January 2000. Intervening in the permit process was ancillary to the Trust's objections to the condemnation, which involved only a small part of the Heidler Road Channel Improvement Project. The trial court also noted that the Trust sought an award of its attorney fees and costs under the Clean Streams Law[21] for its success in the Environmental Hearing Board proceeding. This further supported the trial court's conclusion that the two proceedings were separate.

In its request for an award of fees under the Clean Streams Law, the Trust argued that it was entitled to fees "because it was the substantially prevailing party who successfully appealed this matter, resulting in the suspension of the

---

[20] Section 1513 of The Second Class Township Code, added by the Act of November 9, 1995, P.L. 350.

[21] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

16

Permit, ultimately leading to the termination of the Permit." R.R. 7693a. The Trust stated that the "Clean Streams Law [wa]s the core statute providing the legal authority for the Permit and is certainly the primary statute involved" and that it incurred attorney fees and costs in a nearly seven-year proceeding "based upon the legality of actions under the Clean Streams Law." R.R. 7731a-7732a.

By contrast, in its preliminary objections to the Township's declaration of taking, the Trust argued that the Township lacked authority to condemn under The Second Class Township Code; failed to comply with state and federal law; and acted arbitrarily and capriciously. Ultimately, the Trust prevailed because The Second Class Township Code did not authorize the Township to create a new channel, as called for in the Heidler Road Channel Improvement Project, but only to "widen and deepen watercourses." *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d 1288, 1291 (Pa. Cmwlth. 2011), *appeal denied*, 49 A.3d 444 (Pa. 2012). Likewise, the Township's "project would construct a new system or facility for collecting surface water runoff, not improve an existing system, as authorized by Section 2702 [of The Second Class Township Code, 53 P.S. §67702, added by the Act of November 9, 1995, P.L. 350]." *Id.*

We agree with the trial court that the Environmental Hearing Board proceeding was completely separate from the condemnation proceeding. Even had the Township's project been permitted by DEP, it did not necessarily follow that the Trust property would have been condemned. The project may have been configured differently in the course of DEP's review. A condemnation may lead to different sorts of ancillary litigation, but the language of former Section 408 of the Eminent Domain Code is limited to those costs incurred "because of the condemnation proceedings." 26 P.S. §1-408 (repealed; now codified at 26 Pa. C.S.

17

§306). In short, the trial court did not err in denying the Trust's request for costs incurred in the Environmental Hearing Board proceeding.

In its second assertion of error, the Trust contends that the trial court erred in denying its request for its costs that advanced related litigation. That litigation included: (1) a lawsuit against the Township for violations of various Pennsylvania storm water management statutes; (2) a professional negligence action against Hill Engineering for designing a flawed storm water management system on Heidler Road; (3) an action against Millcreek School District for discharge of storm water onto the Trust property; and (4) an action against the Township for violating the Sunshine Act.[22] Trust's Brief at 34. The trial court found that this other litigation resulted in "more than $280,000 in attorney fees for time expended on cases other than this case contrary to what was attested to in support of the fee petition." Trial Court op., 12/16/2014, at 23.

The Eminent Domain Code does not entitle a condemnee to recover all fees, costs and expenses incurred in fighting a condemnation. Former Section 408 authorizes reimbursement of those costs "actually incurred because of the condemnation proceedings." 26 P.S. §1-408 (repealed; now codified at 26 Pa. C.S. §306). As this Court has explained, condemnees are

> entitled only to those costs and expenses actually incurred by them *due to the [] condemnation*. They [are] not entitled to an award for speculative damages, loss or injury or for any other category of damages not expressly provided by statute.

*In re Condemnation by the Commonwealth of Pennsylvania*, 709 A.2d at 944 (emphasis added). The trial court did not err in excluding the Trust's request for

---

[22] 65 Pa. C.S. §§701-716.

18

costs and expenses attributed to litigation that was separate from the condemnation action, albeit motivated by the condemnation.

In its third issue, the Trust argues that the trial court erred in its application of the principles established in *LaRocca,* 246 A.2d at 337, to evaluate the reasonableness of attorney fees in a condemnation case. This produced error; for example, the trial court improperly considered the Trustee's ability to pay her attorneys what they charged.

Our courts have used the *LaRocca* factors when fashioning a fair and reasonable award of attorney fees in condemnation actions. *See, e.g., In re Condemnation by Redevelopment Authority of Lawrence County*, (Pa. Cmwlth., Nos. 2774 C.D. 2010, 2775 C.D. 2010, 41 C.D. 2011, 90 C.D. 2011, filed February 22, 2013), slip op. at 15 (citing *LaRocca*, 246 A.2d at 337);[23] *In re Condemnation by Urban Redevelopment Authority*, 452 A.2d 1113 (Pa. Cmwlth. 1982)). Accordingly, it was appropriate for the trial court to use the *LaRocca* factors to evaluate the Trust's request for attorney fees. Under *LaRocca*, the court should consider "the difficulty of the problems involved[;] ... the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of property in question." *LaRocca,* 246 A.2d at 339. There is no merit to the Trust's third assignment of error.

In its fourth issue, the Trust argues that the trial court's methodology for setting the award for attorney fees lacked a foundation. It contends that the assessment of "attorney's fees should be based on the efforts within the case" and nothing else. *Harborcreek Township v. Ring*, 570 A.2d 1367, 1372 (Pa. Cmwlth.

---

[23] Although an unreported opinion cannot be cited as binding precedent, we cite *Lawrence County* for its persuasive value. *See* 210 Pa. Code §69.414(a).

1990) (citing *Benkovitz Appeal,* 452 A.2d 1113 (Pa. Cmwlth. 1982)). In its exhaustive opinion, the trial court explained that it chose its methodology because "the Trust has failed to prove the reasonableness of the fees, costs and expenses it paid to its attorneys." Trial Court op., 12/16/2014, at 43. In that vacuum, the trial court looked to the Township's costs for legal representation, which the trial court found reasonable, and then doubled that amount to arrive at a fair and reasonable award to the Trust. We cannot say this was "palpable error," given the trial court's finding that the Trust did not prove the reasonableness of its request. *LaRocca*, 246 A.2d at 340.

In its fifth issue, the Trust contends that because it is not clear how the trial court arrived at the amount of fees, costs, and expenses it awarded to the Trust, it must be reversed.[24] The trial court made numerous findings about the excessiveness of the Trust's request, to wit:

> The number of billable hours expended by the [Trust's attorneys] was exceedingly high.… An unusually large amount of time attributable to group meetings was billed to the Trust, without sufficient justification in the record.… In October 2009 Ms. Hirt [the trustee of the Trust] paid another $33,000.00 for a meeting attended by six lawyers and one paralegal. At that time of the October meeting there were no scheduled legal proceedings in this case until December and briefing on pending motions had been completed. With regard to those meetings, three (3) attorneys billed over fourteen (14) hours each per day.… An excessive amount, more than $45,000, was spent on travel.... The amount requested for costs includes more than $70,000 for making copies.

---

[24] The Trust argues that the trial court must do a line-by-line excision of those fees that were compensable. The trial court noted, however, that the Trust's own experts did not undertake this effort. Trial Court op., 12/16/2014, at 32-33.

20

Trial Court op., 12/16/2014, at 21-23. There is no requirement that a trial court do a line-by-line analysis of a legal invoice to determine its reasonableness. *See In re Appeal of Silverman*, 90 A.3d 771, 785 (Pa. Cmwlth. 2014) ("[W]e hold that the [trial court] was not required to delineate with specificity to Counsel's satisfaction every reason for every disallowance of every aspect of the fee request. Instead, it is sufficient that the [trial court] explain its decision in a manner sufficient for appellate review."). Here, the trial court presented, in clear terms, how it arrived at a reasonable attorney fee award.

Regarding the award for the costs of engineering studies and reports, the trial court explained that it found neither the Trust's experts nor the Township's experts persuasive on what constituted a reasonable award of costs. The Trust presented the testimony of three expert witnesses, Paul White, Gregory C. Newell, and Christopher M. Hager, to testify regarding the work of the Trust's experts and the reasonableness of their fees. In opposition, the Township presented the testimony of two experts: Clayton Fails and Jeffrey Wright. Fails testified about the worked performed by Hill Engineering, the Township's engineering firm; Wright testified regarding the fees charged by the Trust's engineering experts, Cahill, Newell and Brickhouse, and described their fees as "significantly unreasonable." N.T., 5/27/2015, at 68-93 and N.T., 5/28/2015, at 8; R.R. 6019a-44a, 6209a.

The trial court found that the question was not whether the engineers did their job or whether the amount they charged fell within professional standards; rather, the question was whether the services were required given the nature of the litigation. What was lacking was "an analysis from a technical perspective, of the role played by the Trust's experts in the outcome of the condemnation case,"

21

which the trial court noted "could have been helpful." Trial Court op., 8/19/2015, at 19. The trial court reduced the amount requested for the engineers' work because much of their work applied "to other lawsuits" and played a limited role in the outcome of the condemnation case. *Id.* at 32. Stated otherwise, the trial court did not challenge the professional quality of the work of the engineers or find that their charges were excessive. They were, however, largely irrelevant to the outcome in the condemnation. Again, we cannot say that the trial court abused its discretion in this regard.

The Trust argues the *LaRocca* factors have no application to an award for engineering and geology fees. It contends that because all of its engineering costs were reasonable, it should be reimbursed for all of those costs. First, this argument overlooks the trial court's observation that the "reasonableness" opinion offered by the Trust's experts was conclusory and somewhat subjective. Second, the *LaRocca* factors, although developed for an evaluation of professional legal services, are suitable for a review of the reasonableness of other professional services, *i.e.*, appraisal and engineering services. *LaRocca* provides a sensible approach to an evaluation of the reasonableness of any professional's fees. We reject the Trust's argument to the contrary.

In its sixth issue, the Trust argues that the trial court failed to consider how the condemnation would have diminished the value of the Trust's property as a whole, even though the taking involved .618 acres valued at $9,000. This might be compelling in a case where the condemnation was done for the purpose of constructing, for example, a high-voltage transmission line or an unsightly cell tower that would affect the value of surrounding property. That was not the case here. Further, it is unlikely that a different approach on a single *LaRocca* factor

22

would have produced a materially different fee award. Again, we do not see a palpable error.

In its seventh issue, the Trust contends that the trial court erred in finding that the amount of time billed by the Trust's attorneys and experts was unreasonable. The trial court set forth its reasons for this finding:

a. Excessive group meetings totaling $234,401[] in attorney fees.

b. A majority of work carried out by firm partners who commanded the highest fees.

c. Pervasive duplication of effort, including such activities as redundant document and pleading reviews, lawyer to lawyer consultations and meetings, with multiple attorneys and paralegals involved in the same matters without any justification in the record.

d. Numerous time entries [that] were generalized and vague.

e. A substantial amount of time for which the activity was redacted.

f. Charges of more than $40,000 to the Trust for time expended on administrative tasks such as organizing file boxes, creating document indexes and obtaining copies of documents.

Trial Court op., 12/16/2014, at 23-24. The Eminent Domain Code does not require that the condemnee be made whole. *In re: Condemnation by the Commonwealth, Department of Transportation*, 709 A.2d at 944. We must give deference to the trial court's factual findings and judgment. *LaRocca*, 246 A.2d at 340. In short, we conclude that the Trust's argument lacks merit.

In its eighth issue, the Trust contends that the trial court improperly reduced its reimbursement because the Trust engaged a Philadelphia law firm to

23

represent it. However, the trial court stated that it did not "challenge ... Ms. Hirt's right to secure legal counsel of her choosing...." Trial Court op., 12/16/2014, at 25. Rather, the trial court explained:

> Other than pointing to the outcome and blaming [the Township] for its vigorous defense of the Trust's claims the record is essentially silent as to any *explanation why it was necessary and therefore, reasonable to hire two separate law firms* and have an extraordinary number of attorneys and others involved on an ongoing basis in a condemnation case of this nature.... In general the Trust has failed to prove the reasonableness of the fees, costs and expenses it paid to its attorneys.

*Id*. at 43 (emphasis added). It was the number of attorneys, not their hometowns, that gave the trial court pause.

Regarding the billing rates of Philadelphia counsel, the trial court noted that, "[w]ith the exception of the Trust's own expert witness there is nothing in the record to indicate what other practitioners in eminent domain cases outside the Erie and Philadelphia areas charge for such work." Trial Court op., 12/16/2014, at 19. The choice of counsel belonged to the Trust. The problem was that the Trust's fee expert did not give "any serious consideration to the ability of the Trust to shoulder the costs of its legal fees and expenses, a factor specifically identified in Pennsylvania law as an important consideration." *Id.* at 33. Nor did the Trust show that only the proverbial Philadelphia lawyer had the expertise to represent the Trust.

The trial court was present at the hearing and able to evaluate the performance of all the attorneys. This is why our Supreme Court has directed that we give great deference to the findings of the trial court. *LaRocca*, 246 A.2d at 340. We reject the Trust's contrary contention on this issue.

24

In its ninth issue, the Trust contends that the trial court's reduction of the paralegal's billing rate was against the clear weight of the evidence, arbitrary and erroneous. The Trust provided testimony that the paralegal performed at the level of an experienced associate attorney and that her billing rate was within the range of paralegal rates charged in northwest Pennsylvania. In response, the Township provided testimony and an affidavit that the hourly rates charged for these paralegal services were outside the normative rates charged in northwest Pennsylvania. The trial court decided to credit the Township's evidence, which is the prerogative of the fact finder. We reject this assignment of error.

In its final issue, the Trust challenges the trial court's reduction of the Trust's fee award because its counsel used "block billing." The Township's expert, Stroyd, explained that "most of the entries were block billed, so that to take a look and to determine how much time [was] spent on that matter as opposed to the other matters that are listed, is impossible." N.T., 10/29/2014, at 160; R.R. 2380a. The trial court found that "[i]n the absence of explanatory testimony, the use of block billing precludes an objectively accurate determination of the reasonableness of time expended on particular tasks or the necessity of a particular attorney related activity." Trial Court op., 12/16/2014, at 21. The trial court's decision not to accept "block billing" did not constitute an abuse of discretion.

## Conclusion

We reject the Township's appeal that the Trust's Fee Petition was untimely filed. A condemnee's recovery of attorney and expert fees is governed solely by the Eminent Domain Code, and it does not set forth a deadline for seeking recovery.

25

We reject the Trust's appeal of the amount of the award. The Trust decided to pursue any and all avenues of redress to prevent the Township from pursuing the Heidler Road Channel Improvement Project, but only one involved the actual condemnation. The Trust used the professional services of several law firms and multiple technical experts. The Trust is entitled to pursue all means at any cost to preserve its property, but it does not follow that all those fees, costs and expenses were reasonable. The trial court's findings support its decision; thus, we will not interfere with the trial court's award.

For the above-stated reasons, we affirm the decision of the trial court.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Millcreek, | : | |
| | : | |
| v. | : | No. 1725 C.D. 2015 |
| | : | |
| Angela Cres Trust of June 25, 1998 | : | |
| | : | |
| Appeal of: Angela Cres Trust of June 25, 1998 and Laurel A. Hirt as Trustee of the Angela Cres Trust of June 25, 1998 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Township of Millcreek, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1847 C.D. 2015 |
| | : | |
| Angela Cres Trust of June 25, 1998 | : | |

# **O R D E R**

AND NOW, this 22nd day of June, 2016, the order of the Court of Common Pleas of Erie County dated August 19, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge