IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Township of Millcreek | : | |
| | : | |
| v. | : | No. 449 C.D. 2018 |
| | : | Argued: October 4, 2019 |
| Angela Cres Trust of June 25, 1998 | : | |
| | : | |
| Appeal of: Angela Cres Trust of | : | |
| June 25, 1998, and Laurel A. Hirt | : | |
| as Trustee of the Angela Cres Trust | : | |
| of June 25, 1998 | : | |


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: November 25, 2019

The Angela Cres Trust of June 25, 1998 (Trust) appeals an order of the Court of Common Pleas of Erie County (trial court) awarding the Trust legal fees in the amount of $285,000. This award reimbursed the Trust for a portion of the fees and costs it paid to recover the fees and costs it incurred to challenge a condemnation of Trust land by the Township of Millcreek (Township). The Trust contends that the trial court erred and abused its discretion because it arbitrarily awarded only 10% of the Trust's actual "fees-on-fees." The Trust also argues that in fashioning its "arbitrary" award, the trial court improperly considered the Trust's refusal to settle the initial fee petition and the wealth of the Trustee. The Township responds that the Trust simply failed to prove that its legal fees and costs of $2.85 million were reasonable.

## Background

This case concerns a dispute between the Trust and the Township that began in June 2005, when the Township initiated a condemnation of Trust property valued at $9,000 as part of its "Heidler Road Channel Improvement Project." In accordance with the Eminent Domain Code, 26 Pa. C.S. §§101-1106,[1] the Trust filed preliminary objections to the Township's declaration of taking.[2]

On December 16, 2009, the trial court sustained the Trust's preliminary objections, concluding that the Township lacked authority under The Second Class Township Code[3] to build a water channel on Trust property. This Court affirmed. *See Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 25 A.3d 1288 (Pa. Cmwlth. 2011), *appeal denied*, 49 A.3d 444 (Pa. 2012). On August 3, 2012, four days after the Township's appeal to the Pennsylvania Supreme Court was denied, the Township filed a second amended declaration of taking, which the trial court denied.

In October 2013, the Trust filed a Petition for Fees, Costs and Expenses (Fee Petition) to recover the $3,359,900.33 in legal fees it spent to defend against the Township's condemnation of Trust property. In September of 2014, the Trust

---

[1] The former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. §§1–101 – 1–903, was repealed by Section 5 of the Act of May 4, 2006, P.L. 112. In 2006, the Eminent Domain Code was consolidated at 26 Pa. C.S. §§101-1106 (effective September 1, 2006).

[2] "Preliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions." *In re Condemnation of .036 Acres, More or Less, of Land Owned by Wexford Plaza Associates*, 674 A.2d 1204, 1207 (Pa. Cmwlth. 1996) (citing *North Penn Water Authority v. A Certain Parcel of Land*, 650 A.2d 1197 (Pa. Cmwlth. 1994)). In eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages. *North Penn Water Authority,* 650 A.2d at 1201.

[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-68701.

filed a supplemental petition seeking reimbursement of its engineering and technical expert fees, which totaled $649,682.63. The trial court bifurcated the hearing to separately address each fee request. In December 2014, the trial court awarded the Trust $517,868 in attorney fees, costs and expenses, and in August 2015, the trial court awarded the Trust $164,000 in expert witness fees, costs and expenses. The Trust appealed the award, as did the Township.

On June 22, 2016, this Court affirmed the trial court's award. *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 142 A.3d 948 (Pa. Cmwlth. 2016) (*Fee Petition I*). The Trust sought reconsideration, which this Court denied. Subsequently, the Trust petitioned the Pennsylvania Supreme Court for allowance of appeal, which was denied. *Township of Millcreek v. Angela Cres Trust of June 25, 1998*, 166 A.3d 1236 (Pa. 2017).

In January 2015, while the Fee Petition was pending, the Trust filed an "Interim Petition for Additional Fees, Costs and Expenses." The Trust sought to recover approximately $2.85 million, *i.e.*, the amount it spent litigating the Fee Petition. The trial court conducted a three-day hearing on the Trust's petition.[4]

The Trust presented the expert testimony of Steven Tasher,[5] who reviewed the invoices from the Trust's three law firms; the pleadings; and the Fee Petition. Tasher prepared "a task-based analysis," looking at "the work that was required to be performed" and evaluating that work. Notes of Testimony (N.T.), 12/19/2017, at 157; Reproduced Record at 8767a (R.R. __). In assessing the

---

[4] Attorneys Eric Purchase of Purchase & George; Herbert Bass of Fox Rothschild; and James McDonald, Jr. of The McDonald Group, provided testimony regarding their law firms' billing invoices. The Trustee, Laurel Hirt, also testified.

[5] Tasher is the managing director of Wyatt Partners, a consulting firm. He has advised companies and law firms concerning attorney billing practices and guidelines. In addition, he has served as an expert witness in attorney fee litigation in multiple jurisdictions.

3

reasonableness of the Trust's legal fees, Tasher explained that he was guided by Rule 1.5(a) of the Pennsylvania Rules of Professional Conduct, which governs the propriety of a lawyer's fee agreement.[6]   After reducing the Trust's requested additional fees by $200,000, which he attributed to a double counting error, Tasher opined that the Trust's legal fees of $2.85 million were reasonable, given the Township's "aggressive" opposition to the Fee Petition and the difficulty of complying with the trial court's "rulings."   N.T., 12/19/2017, at 143, 145; R.R. 6463a, 6469a.

In opposition, the Township offered the expert testimony of Arthur H. Stroyd, Jr., who was familiar with the condemnation litigation and knowledgeable

---

[6] Rule 1.5(a) states as follows:

> (a) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. The factors to be considered in determining the propriety of a fee include the following:
>
> > (1) whether the fee is fixed or contingent;
> >
> > (2) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> >
> > (3) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> >
> > (4) the fee customarily charged in the locality for similar legal services;
> >
> > (5) the amount involved and the results obtained;
> >
> > (6) the time limitations imposed by the client or by the circumstances;
> >
> > (7) the nature and length of the professional relationship with the client; and
> >
> > (8) the experience, reputation, and ability of the lawyer or lawyers performing the services.

204 Pa. Code Rule 1.5(a).  The trial court found that Rule 1.5(a) was worthy of consideration but not determinative where a "third party is asked to foot the bill."  Trial Court Op. at 30.  Rather, Rule 1.5(a) governs the conduct of an attorney when entering into a fee agreement with his client.

about the legal marketplace in Erie, Pennsylvania. Stroyd criticized the Trust's attorneys' use of "block billing," *i.e.*, a single time entry to cover multiple tasks. Because the time was not allocated among these tasks, Stroyd stated the reasonableness of the total could not be discerned. Stroyd noted that 87% of the total hours billed by the attorneys for the Trust were in a block-billed format. Stroyd emphasized that the Trust's attorneys charged hourly rates that far exceeded what is reasonable in the Erie legal marketplace. Stroyd concluded that "none of the fees and costs" of litigation for which the Trust sought reimbursement were reasonable. N.T., 12/20/2017, at 156; R.R. 9020a. Stroyd opined that the Trust was not entitled to recover any fees it paid to litigate the Fee Petition.

The trial court awarded the Trust $285,000 as reimbursement for its fees, costs and expenses that it incurred to pursue the Fee Petition. In support, the trial court issued a 46-page opinion.

In the Fee Petition proceeding, the trial court had identified "problems" with "a block billing format, vague and generalized invoice entries, inordinately high hourly fees, lack of evidence of justification and other deficiencies." Trial Court Op. at 10. Nevertheless, "the Trust's attorneys made no material changes to the manner in which legal services were provided or documented in the fees on fees petition." *Id*.

The trial court found Stroyd's testimony "substantially more credible" because he "methodically categorized and catalogued the tasks performed by Trust lawyers." *Id.* at 34. The trial court offered several reasons for not crediting the Trust's expert. Specifically, Tasher "did not provide a specific analysis of the content of the invoice summaries or 'blocks' in question or whether the time spent on specific tasks expressed in the 'blocks' was reasonable and necessary." *Id.* at 28.

5

Indeed, in testimony given in other fee petition proceedings, Tasher had criticized "block billing" and stated that such practices require "amplification" from the timekeepers. *Id*. However, the trial court found that Tasher did not provide this amplification; at best, Tasher did a "walk through" with the timekeepers. *Id*.

The trial court rejected Tasher's claim that the Trust's fees were justified by the Township's vigorous defense, noting that the large amount at issue in the Fee Petition warranted a vigorous defense. Likewise, the trial court rejected Tasher's claim that the bifurcated hearing was responsible for the Trust's extraordinary fee demand. Rather, the bifurcation was required because the Trust neglected to request $650,000 in engineering fees in its initial Fee Petition. Finally, the trial court found it irrelevant that the Trustee had no complaint with the attorney fees paid by the Trust. This fact did not make these fees presumptively reasonable.

To evaluate the reasonableness of the Trust's attorney fees and costs, the trial court considered the factors established in the Supreme Court's decision in *In re LaRocca's Trust Estate*, 246 A.2d 337 (Pa. 1968). Those factors are:

> the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* at 339. The trial court discussed each *LaRocca* factor in detail.[7]

---

[7] On the *LaRocca* factors, the trial court found as follows:

First, the Trust's attorneys billed for 6,470 hours by 17 attorneys and a total of 37 timekeepers for a total of $2.9 million to litigate the Fee Petition. Trial Court Op. at 34.

6

The trial court determined that the majority of the Trust's legal fees could not be recovered for the reasons that follow:

> 1. The hourly rates of the attorneys, both partners and most associates of [Fox Rothschild], were not reasonable as those rates were nowhere near local norms of compensation for attorneys of comparable experience and ability in the area of practice required. This resulted in an unjustified expense of approximately $764,000.
>
> 2. The hourly rates for the paralegals … were not reasonable as those rates were significantly above local norms of compensation for paralegals of comparable experience and ability. This resulted in an unjustified expenditure of approximately $118,000.

---

Second, capable attorneys and support personnel performed the work, but there was "no justification in the record for the inordinate number of attorneys and others involved on the Trust's behalf throughout the litigation process and for the many instances of multiple attorneys, multiple partners and paralegals continuing to be involved in virtually every aspect of the fees litigation." *Id*.

Third, the case did not involve complex, highly technical or novel questions of law. *Id*. at 35.

Fourth, the Fee Petition did not involve an issue of broad public policy. *Id*.

Fifth, the Trust retained attorneys from three law firms, and "[t]he attorneys were not responsible for developing a litigation budget nor did they act within any clearly delineated financial constraints." *Id*. at 37.

Sixth, there was no fund created. *Id*.

Seventh, the Trust's attorneys were capable, but the Fee Petition did not require the environmental or condemnation specialists who billed them.

Eighth, the results were limited because the Trust was awarded 17% of its original claim of $4 million and lost its appeal. *Id*. at 37-38.

Ninth, the Trustee had considerable resources and was able to pay "legal fees in any amount reasonable or not." *Id*. at 38.

Tenth, the value of the underlying property was $9,000, and the Trust incurred $4 million in legal fees and costs to prevent the condemnation of this property. In the fees-on-fees petition, the Trust sought to recoup $2.5 million it spent to pursue the $4 million in legal fees and costs incurred to defend against the condemnation. *Id*.

7

3.   The amount of time and the number of attorneys involved with the Motion for Reconsideration were unreasonable particularly in light of the entirely speculative basis for the request resulting in an unnecessary expenditure of more than $80,000.

4.   The amount of time and the number of attorneys involved in the development of a post-trial motion were unreasonable in light of its superfluous nature resulting in the unnecessary expenditure of $90,000.

5.   The Trust's attorneys charged their client approximately $240,000 to participate in a mediation process that dealt almost exclusively with advancing a solution to the stormwater problem in the Heidler Road area and had nothing to with the condemnation proceeding and little to do with resolving the fees petition. A significant portion of this amount, if not all of it, would not be recoverable pursuant to [former Section 408 of the Eminent Domain Code,] 26 Pa.C.S. [§]1-408.

6.   Excessive charges for administrative tasks resulting in the expenditure of $78,000.

Trial Court Op. at 42-43. These unnecessary charges totaled well over $1 million. As for the remainder of the requested fees, the trial court concluded that they were not susceptible to a precise evaluation because of the use of block billing and the lack of testimony to explain them.

The trial court rejected the conclusion of the Township's expert that the Trust was not entitled to any fees for litigating the Fee Petition. Rather, the trial court determined that $285,000, or 10% of the amount the Trust actually paid, constituted a reasonable fee award. The trial court reasoned that given the Trust's limited success in the Fee Petition, *i.e.,* recovery of 17% of the amount requested, the excessive hourly rates charged and the lack of evidence needed to "parcel out" the block billing, an award of 10% was appropriate.

8

**Appeal**

On appeal,[8] the Trust has raised five issues, two of which we have consolidated for purposes of this opinion. First, it argues that the trial court erred and abused its discretion in choosing a flat, arbitrary award that bore no relation to fees and costs that the Trust actually incurred. Second, it argues that the trial court erred and abused its discretion in relying upon irrelevant evidence. Third, it argues that the trial court improperly applied the *LaRocca* factors. Fourth, it argues that the trial court erred and abused its discretion by giving greater weight to the Township's expert witness than to the Trust's expert.

We address these issues *seriatim*.

**Analysis**

**I.**

In its first issue, the Trust argues that the trial court's fee determination cannot be sustained. It contends that the trial court arbitrarily reduced the fees actually incurred and paid by the Trust by 90%, which departs from what is required under the Eminent Domain Code and by precedent. The Township responds that the evidence was overwhelming that the Trust's "actual" legal fees were unreasonable and, further, the Trust was only moderately successful in its Fee Petition.

The Eminent Domain Code authorizes the award of costs to a condemnee who is successful with preliminary objections. Section 306(g) states as follows:

---

[8] This Court's review determines whether the trial court abused its discretion or committed an error of law. *Fee Petition I*, 142 A.3d at 956 n.15.

9

(g) **Costs and expenses.-**

> (1) If preliminary objections which have the effect of terminating the condemnation are sustained, the condemnor shall reimburse the condemnee for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings.

> (2) The court shall assess costs and expenses under this subsection.

26 Pa. C.S. §306(g).[9]  As we have explained, the "statute does not require that a condemnee be made whole; rather, recovery is limited to reasonable attorney and expert fees and costs." *Fee Petition I*, 142 A.3d at 956.

In a fee award, a trial court must explain its reasoning so that this Court can conduct meaningful appellate review. *In re Appeal of Silverman*, 90 A.3d 771, 785 (Pa. Cmwlth. 2014).  In doing so, however, a trial court is not required "to delineate with specificity … every reason for every disallowance of every aspect of the fee request." *Id*.  In *Arches Condominium Association v. Robinson*, 131 A.3d 122, 132 (Pa. Cmwlth. 2015), this Court noted that a flat $10,000 award of attorney fees, in another case, which bore no relation to "actual expenses involved," could not be sustained.

This discussion in *Arches* referred to a $10,000 fee award that was appealed, and reversed, in *Centennial Station Condominium Association v. Schaefer Company Builders, Inc*., 800 A.2d 379, 386 (Pa. Cmwlth. 2002).  This Court reversed the flat fee in *Centennial* because the trial court had received no evidence

---

[9] The codification of the Eminent Domain Code took place after the Township filed its declaration of taking of Trust land but before the trial court granted the Trust's preliminary objections to the condemnation.  The precodification statutory provision was found at former Section 408 of the Eminent Domain Code, 26 P.S. §1-408 (repealed), and is nearly identical to 26 Pa. C.S. §306(g).

10

on the fee request before entering its award. By contrast, here, the trial court conducted a three-day hearing on the Trust's fees-on-fees petition. Notably, in *Arches*, this Court affirmed the trial court's fee award. Also notable was this Court's observation that "as long as the trial court reviews the record … it is difficult for an appellate court to hold that a trial court abused its discretion in issuing a particular award of attorney's fees." *Arches*, 131 A.3d at 132-33. Nevertheless, it is undeniable that a flat fee award, unmoored from the actual invoices for legal services, is not favored.

In *Fee Petition I*, 142 A.3d 948, the trial court awarded the Trust legal fees that doubled those incurred by the Township in the condemnation. It awarded far less on engineering fees, for a total award of $681,868. The Trust complains that the trial court's total award of fees, from both petitions, is less than the $1 million the Township incurred to litigate this matter.[10] Because the trial court's 10% bears no relation to the legal fees paid by either party, the Trust argues the award is arbitrary and capricious.

Additionally, the Trust argues that the trial court erred in its application of the Eminent Domain Code by eliminating those legal fees incurred to pursue unsuccessful motions or on litigation before the Environmental Hearing Board, which was not directly related to the condemnation proceeding. The Trust argues that it would not have "actually incurred" any legal fees but for the Township's decision to condemn, unlawfully, Trust land. 26 Pa. C.S. §306(g). Thus, all work

---

[10] The Trust notes that the trial court's award of $285,000 was equal to the invoice of Purchase & George, the Erie law firm that was primarily responsible for the Fee Petition. The Trust argues that this means nothing was awarded for the fees paid to Fox Rothschild and The McDonald Group. This is an inaccurate characterization of the award. The trial court pointed out that some of the fees of Purchase & George were unreasonable, such as its filing of a post-trial motion. Trial Court Op. at 6-7. It is a coincidence that the 10% award matches the actual fees of one law firm.

11

performed by the Trust's attorneys was necessary and reasonable, even those efforts that were not successful, such as the post-trial motion.

The Eminent Domain Code reimburses those fees and costs that are determined to be "reasonable." *Id*. Generally, this means that "[t]he assessment of attorney's fees should be based on the efforts within the case and should be reasonable in light thereof." *Harborcreek Township v. Ring*, 570 A.2d 1367, 1372 (Pa. Cmwlth. 1990). Here, the trial court found that fees incurred for the motion for reconsideration, for a "superfluous" post-trial motion, and for a mediation that had nothing to do with the Fee Petition would not be reimbursed. Trial Court Op. at 42.

We agree with the Trust that the Eminent Domain Code should be given a broad reading when determining whether a particular legal task was caused by the condemnor's action. Certainly, "reasonable" fees encompasses those incurred to pursue fees and costs allowed under 26 Pa. C.S. §306(g). However, causation is a matter for the trial court to decide. It decides whether certain tasks constitute a reasonable legal response to a condemnor's action or have an attenuated relation to the condemnation.

This Court will not interfere with a fee award that is based on "all the circumstances" of a case, even if the trial court does not explain exactly how it calculated an award. *In re Condemnation by Urban Redevelopment Authority*, 451 A.2d 1071, 1072-73 (Pa. Cmwlth. 1982). Here, the circumstances on which the trial court focused were that the Trust's attorneys issued invoices that contained:

> [an] extraordinary number of hours billed by firm partners, the pervasive duplication of effort, the utilization of multiple attorneys and paralegals for various court proceedings and other legal tasks, hourly rates by some attorneys and paralegals that were considerably outside local norms, and the inordinate sums charged for travel and administrative tasks.

12

Trial Court Op. at 42.

A reduction of a fee request that is based on credible expert testimony is appropriate. *Gross v. City of Pittsburgh*, 741 A.2d 234, 240 (Pa. Cmwlth. 1999). Here, after a lengthy hearing, the trial court chose an award in an amount that fell between the opinions of two experts. This is consistent with the way a dispute about a property tax assessment is often resolved. *See, e.g., In re Appeal of Township of Ross,* 491 A.2d 929, 931 (Pa. Cmwlth. 1985) (trial court's determination that the fair market value of property lies between the valuations offered by the experts does not render the determination arbitrary). *See also Bosniak v. Redevelopment Authority of City of Philadelphia*, 341 A.2d 260 (Pa. Cmwlth. 1975) (condemnation award that falls between the opposing experts' opinions will be sustained).

The trial court delineated over $1 million in fees that were either "patently unreasonable" or "not incurred as part of the condemnation or fees case." Trial Court Op. at 44. It evaluated the remainder using the *LaRocca* factors. It was not able to "parcel out of an aggregate request of $2.85 million an amount that was reasonable for the Trust to have incurred in its effort to recover its attorneys' fees." *Id*. at 41.

The trial court concluded that the Trust did not meet its burden of proving "that any specific amount of its claim was reasonable." *Id.* at 44. Simply, the award of 10% of the actual fee incurred was the best the trial court could do given the block billing practice of the Trust's attorneys and its inability to provide the court with the expected "amplification." Trial Court Op. at 28. Unlike *Centennial*, where the trial court's flat $10,000 fee award was entered without a hearing, here, the trial court conducted a lengthy hearing. The trial court awarded $285,000, which is a substantial award that fell between the opinions of two experts

13

as to what constituted a "reasonable" fee award. Given the fact that the Trust failed to prove that "any specific amount" of its incurred fees and costs was reasonable, we conclude that the trial court did not err or abuse its discretion in its award on the Trust's fees-on-fees petition.

**II**.

In its second issue, the Trust argues that the trial court erred in its application of the *LaRocca* principles by considering the Trustee's wealth. The Trust also contends that the trial court wrongly identified the amount in dispute and did not consider the labor provided on behalf of the Trust.

In *LaRocca*, the Pennsylvania Supreme Court explained:

> The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error. [*T*]*he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error.*

*LaRocca*, 246 A.2d at 340 (internal citations omitted). The Supreme Court set forth eleven factors to be taken into consideration in determining the fee or compensation payable to an attorney. *Id.* at 339. Notably, the trial court does not have to address every *LaRocca* factor. *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380, 390 (Pa. Super. 2018).

*LaRocca* requires an examination of the client's ability to pay "a reasonable fee for the services rendered." *LaRocca*, 246 A.2d at 339. In considering this factor, the trial court found that the Trustee had considerable resources "largely

14

comprised of stock in [the] Erie Insurance Company[,]" which was valued at over $500 million, Trial Court Op. at 38, and was able to pay $6 million to attorneys to contest the Township's effort to obtain an easement on her property valued at $9,000. Thus, the trial court found that the Trust was "in a position to pay attorneys' fees in any amount, reasonable or not." *Id.* at 38. The Trust argues the trial court placed too much emphasis on the Trustee's wealth.

The extent of the Trustee's wealth does not foreclose the Trust from recovering its reasonable attorney fees and costs from a condemnor. Precedent does not explain how the *LaRocca* factor of "ability of the client to pay a reasonable fee for the services rendered" should be applied in a condemnation proceeding. *LaRocca,* 246 A.2d at 339. *LaRocca* raised "the ability of the client to pay" legal fees in a case where the client, a minor, was the beneficiary of a trust. The trust assets totaled $64,000. The client's lawyers sought payment of $10,600 from the trust for their work in protecting her interest in the trust. The orphans' court reduced the fee award to $7,000. It was in that context that the Supreme Court held that although the attorneys spent a significant amount of time on the matter and obtained a beneficial result for their client, "the small amount of money involved must be taken into consideration in fixing their fee[.]" *Id*. at 340. The Supreme Court affirmed the orphans' court fee award. *See also Shaw by Ingram v. Bradley*, 672 A.2d 331, 333 (Pa. Super. 1996) (trial court reduced legal fees requested by attorneys on behalf of a minor plaintiff because of minor's limited ability to pay).

Here, the trial court dutifully addressed each *LaRocca* factor, including "the ability of the client to pay," and made findings about the Trustee's wealth. This *LaRocca* factor has little direct relevance here. The trial court's finding that the Trustee was able to pay for expensive legal services, whether or not they were

15

reasonable, was unnecessary but, if this was error, it was at most harmless error.[11] In the end, it was not the Trustee's wealth that caused the trial court to reduce the Trust's request for $2.85 million in fees. Rather, it was the trial court's holding that the Trust did not prove that any specific part of that $2.85 million was reasonable.

The Trust also argues that the trial court erred in applying the *LaRocca* factor relating to the amount in controversy. The Trust notes that the amount in controversy was $4 million, which was the total amount of legal fees it spent litigating the Fee Petition. In its opinion, the trial court mentioned the $9,000 value of the property sought to be condemned. The observation of the trial court was a side comment with no impact on the ultimate award. The trial court understood that the Trust "spent $2.85 million" in order to "prove that the $4 million it had already paid … was reasonable." Trial Court Op. at 40.

The trial court addressed each *LaRocca* factor, including the Trust's ability to pay the legal fees it incurred. We discern no reversible error in the trial court's application of the *LaRocca* factors.

## III.

In its third issue, the Trust argues that the trial court abused its discretion by placing undue emphasis on irrelevant matters, such as the Trust's refusal to settle the Fee Petition. The Trust contends that as long as the Township

---

[11] The Trust asserted in *Fee Petition I* that the trial court should have considered the Township's ability to pay a reasonable fee because it was the entity that was going to be called upon to pay the Trust's legal fees. The "ability to pay" *LaRocca* factor is ambiguous. The "client" in *LaRocca* was the minor beneficiary of the trust, but it was the trust that was going to pay the requested legal fees on behalf of the minor client.

The real point is that not every *LaRocca* factor is relevant and required to be considered by the court.

16

continued to challenge its right to attorney fees, the Trust was entitled to fight "on principle." Trust Brief at 28-29 (quoting *Arches*, 131 A.3d at 135).

At the hearing, the Trust's counsel, Eric Purchase, testified about the efforts to settle the Fee Petition. Prior to the hearings on the Fee Petition, the Township offered the Trust $750,000 to settle the matter. N.T., 12/18/2017, at 29, 31; R.R. 8412a, 8414a. The Trust rejected the offer. Purchase explained that, at that time, the Trust had incurred approximately $1 million in fees and costs in the Fee Petition litigation. *Id.* Purchase acknowledged that the Trust did not make a counter-offer, noting that he "never had authority to accept less [than the full amount]." *Id.* at 56; R.R. 8439a.

The trial court stated that the Trust did not make a "good faith attempt at any time in the proceedings to promote or encourage settlement of the fees in dispute[.]" Trial Court Op. at 42. The trial court noted that the Trust continued in this position "even after having the benefit of the trial and appellate courts' decisions and in the face of overwhelming legal authority that strongly suggested that full reimbursement was an exceedingly unrealistic goal." *Id.* Although a party is entitled to fight "on principle," its decision to do so does not mean that its fees will be found reasonable. In evaluating the reasonableness of requested fees, the trial court may consider the party's efforts to mitigate the fees expended in the litigation, or lack thereof. *See McMullen v. Kutz*, 925 A.2d 832, 835 (Pa. Super. 2007), *affirmed*, 985 A.2d 769 (Pa. 2009) (in determining reasonableness of attorney's fee request, trial court did not abuse its discretion by considering lack of settlement negotiations). Here, that includes the Trust's decision not to settle.

Additionally, contrary to the Trust's assertion, the trial court's consideration of settlement discussions did not violate Pennsylvania Rule of

Evidence 408(a), Pa. R.E. 408(a).[12]  Generally, offers to settle or compromise a disputed claim are not admissible to prove or disprove the validity or amount of a claim.  Pa. R.E. 408.  Here, the trial court considered the lack of settlement efforts to assess the reasonableness of the Trust's legal fees, not the validity of the Trust's request for reimbursement.  *See McMullen v. Kutz*, 925 A.2d at 835.

The Trust contends that the trial court placed undue weight on the Trust's continued use of block billing.  The Trust explains that many of the fees at issue were incurred in preparation for the fee proceedings before the trial court issued its opinion in *Fee Petition I*.  Trust's Brief at 31.

The trial court did not merely criticize block billing.  It explained that "amplification" was needed in order to evaluate block-billed entries.  Trial Court Op. at 28.  The Trust's request for fees-on-fees lacked "any serious effort to explain the content of the voluminous entries contained in the block billing format." *Id.* at 40.  Because the Trust's witnesses did not provide a clarification of each task and the time spent, the trial court lacked the evidence needed to conclude that the fees and costs paid by the Trust were reasonable.

In sum, the trial court did not err in considering, *inter alia*, the Trust's refusal to settle its Fee Petition in evaluating the Trust's request for fees to litigate

---

[12] It states:

> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim.

Pa. R.E. 408(a).

18

that petition. Likewise, the trial court's decision not to accept the block-billed invoices did not constitute error or an abuse of discretion.

**IV.**

In its fourth issue, the Trust argues that the trial court abused its discretion by giving greater weight to the testimony of the Township's expert witness than to its expert. Credibility and conflicts in the evidence are for the trial court to resolve. *Beaver Falls Municipal Authority ex rel. Penndale Water Line Extension v. Beaver Falls Municipal Authority*, 960 A.2d 933, 940 (Pa. Cmwlth. 2008). This Court will "not disturb a trial court's credibility determinations where explained" or obvious from the record. *Id.*

Here, the trial court fully explained its credibility determinations. It stated that "the testimony and supporting documents amassed by [] Stroyd provided the kind of in-depth assessment that was demanded by the often confusing aggregated billing entries utilized by the Trust's lawyers, particularly those of [Fox Rothschild]." Trial Court Op. 32. In addition,

> [] Stroyd laboriously reviewed countless invoice entries, followed closely the procedural history of the case and methodically categorized and catalogued the tasks performed by Trust lawyers. Moreover, his experience allowed him the benefit of extensive knowledge of the normative standards of legal practices in northwestern Pennsylvania in both state and federal courts, including customary rates charged by lawyers and other legal professionals in matters of comparable difficulty and complexity as exemplified in this case.

*Id.* Stroyd pointed out: duplication of efforts; multiple attorneys/paralegals attending court hearings; and work done by firm partners, as opposed to attorneys with a lower billing rate, on matters that did not warrant the attention of a senior attorney. Stroyd specifically identified what was unreasonable.

19

The Trust argues that because Stroyd lacked experience in condemnation proceedings, "[i]t was ludicrous to permit [] Stroyd to opine on the intent behind a statute … let alone for the [t]rial [c]ourt to rely on his opinion." Trust Brief at 43. We disagree that Stroyd's testimony about the Eminent Domain Code affected the trial court's award. As the trial court observed, the litigation of a fee petition "required the skill of capable litigation and trial attorneys," not experts on condemnation. Trial Court Op. 37. As an experienced litigator and expert on attorney fees, Stroyd was qualified to opine on the reasonableness of the Trust's fee request.

The Trust also contends that Stroyd was unreliable because he contradicted himself. The Trust explains that, at the hearing, Stroyd acknowledged that the Trust is "guaranteed" to recover its fees under the law, but opined that the Trust should recover zero fees. Trust Brief at 44-45 (quoting N.T., 12/20/2017, at 169; R.R. 9033a). This is not a contradiction. Stroyd's point was that after reviewing the Trust's invoices, he did not find them reasonable. As such, the Trust was not entitled to recover any fees and costs.

Finally, the Trust contends that the trial court erred in holding that Tasher did not sufficiently analyze the block-billed entries and directs the Court to Tasher's expert report. That report identified the amount of fees billed for each task. For example, in preparing the Fee Petition, attorneys at the firm of Fox Rothschild billed the Trust $122,000. Tasher explained:

> Fox Rothschild performed extensive work … preparing its Initial Fee Petition. Fox Rothschild took the lead on drafting and preparing the fee petition. The petition itself was very detailed with the history of the condemnation proceeding (153 paragraphs over 30 pages), accompanied by 155 pages of exhibits (including listing of fees), so the petition had to be prepared by an individual

20

with extensive institutional knowledge and understanding of the information pertaining to the technical aspects of the condemnation.

Accordingly, Mr. Hinerman performed the majority of the work (about $74,500) with some assistance from Mr. Snyder (about $30,000), who also had worked on certain aspects of the underlying condemnation action and whose input was necessary with regard to those aspects, and with assistance of Ms. Snarr (the Fox Rothschild paralegal who worked on certain aspects of the underlying condemnation action) in preparing and redacting invoices. Fox Rothschild also communicated with The McDonald Group (especially Ms. Welsh) since she was the one preparing portions of the exhibits on The McDonald Group (nearly 100 pages of the exhibits were the invoices of The McDonald Group).

R.R. 6482a-83a. Missing from Tasher's analysis is a breakdown of the specific tasks performed; the amount of time for each task; and whether that task was reasonable.

By contrast, Stroyd went through each entry, identifying the date, timekeeper, hours billed, billing rate, amount billed, revised billing rate, revised billed amount, and narrative provided by the Trust's attorneys. Stroyd identified those entries that lacked adequate time descriptions and those entries relating to the Trust's unsuccessful motions. Stroyd identified the time entries relating to the Fee Petition appeal, including the petition for rehearing, and the petition for allowance of appeal to the Pennsylvania Supreme Court, for which no fees could be awarded under *LaRocca*, which requires that the work be successful. Stroyd identified unreasonable time entries for travel, for administrative tasks, excessive group meetings, group conference calls, and attorney fee hearing and preparation.

The trial court's findings about the limitations of Tasher's analysis are supported by the record. Likewise, the trial court's findings on Stroyd's analysis are also supported by the record. We reject the Trust's argument to the contrary.

21

## Conclusion

The Eminent Domain Code does not require that a condemnee be made whole, as the Trust seems to presume. *In re: Condemnation by the Commonwealth, Department of Transportation*, 709 A.2d 939, 944 (Pa. Cmwlth. 1998). It was the Trust's burden to prove that its fees and costs in litigating the Fee Petition were reasonable, and it did not do so. The Trust was entitled to pursue all means and any cost to save its land and recover its attorney fees. It does not follow, however, that all those fees, costs and expenses were reasonable, as required by the Eminent Domain Code before the condemnor must reimburse the condemnee for fees and costs. 26 Pa. C.S. §306(g). The trial court fixed on a 10% award as reasonable, considering the Trust's limited success in the underlying Fee Petition and its failure to prove that "any specific amount" of its claim for fees-on-fees was reasonable.

This Court's standard of review of a legal fee award is highly deferential. Our Supreme Court has directed that "[t]he allowance or disallowance of counsel fees rests generally in the judgment of the court of first instance and its decision will not be interfered with except for palpable error." *LaRocca*, 246 A.2d at 340. Discerning no palpable error, we affirm the trial court.

_____

MARY HANNAH LEAVITT, President Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Millcreek           :
                                     :
           v.               :   No. 449 C.D. 2018
                                       :
Angela Cres Trust of June 25, 1998    :
                                     :
Appeal of: Angela Cres Trust of    :
June 25, 1998, and Laurel A. Hirt   :
as Trustee of the Angela Cres Trust  :
of June 25, 1998                :

# **O R D E R**

AND NOW, this 25th day of November, 2019, the order of the Court of Common Pleas of Erie County, dated March 2, 2018, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge